UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:25-CR-161 (SRU) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIUS JORDAN PRIESTER | | January 13, 2026 |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government submits this memorandum in aid of the sentencing of the defendant, Julius Jordan Priester ("the defendant" or "Priester"), presently scheduled for January 20, 2026, at 2:00 P.M. On October 1, 2025, the defendant pleaded guilty, pursuant to a written plea agreement (the "Plea Agreement") (Doc. 32), to a one-count Information charging a violation of 49 U.S.C. § 46504 for interference with flight crew members and attendants (the "Information"). Doc. 28. The Government respectfully submits that an appropriate sentence in this case includes a sentence of imprisonment in the middle of the Guidelines range.

### I.    BACKGROUND

The basic and uncontested facts are accurately summarized by paragraphs 7-10 of the Presentence Report ("PSR"). Doc. 35. The facts outlined in the PSR describe Priester's dangerous conduct aboard American Airlines flight number AA3359, which departed Bradley International Airport in Windsor, CT, on May 27, 2025. Approximately 30 minutes after takeoff, while in flight over New York, Priester stood up from his seat and removed his shirt. PSR ¶ 8. Shirtless, Priester ran towards the back of the aircraft and approached D.B., one of the flight attendants. D.B., who was seated in the back row of the aircraft, told the Federal Bureau of Investigation ("FBI") that Priester approached him, pulled him out of his seat, and exclaimed, "you're coming with me." *Id.*

After removing D.B. from his seat, Priester knocked him to the ground and placed his body on top of D.B.'s, pinning him to the ground in the aisle and interfering with his ability to perform his duties as a flight attendant. *Id.* While D.B. was pinned to the ground with Priester on top of him, D.B. yelled for help, at which point, a female flight attendant intervened and attempted to calm Priester down. At that point, Priester got off D.B. *Id.* D.B. told the FBI that he believed Priester was having some sort of psychotic episode based on his behavior. In her statement to the FBI, the female flight attendant recounted that Priester had D.B. pinned to the floor with "full force," and she was worried that Priester was moving towards the back to open the back door of the aircraft. *Id.*

After Priester was returned to a seat in the back of the aircraft and away from other passengers, the flight attendants notified the pilot of the assault. The pilot told the FBI that the female flight attendant sounded distressed while notifying him of the incident. PSR ¶ 9. After receiving notification of the assault, the pilot contacted Air Traffic Control ("ATC") and declared an emergency. *Id.* After consultation with ATC and American Airlines, the pilot made the decision to return to Bradley International Airport, where the flight landed without further incident. *Id.*

## II.   STATUTORY AND GUIDELINES EXPOSURE

### A.   *Statutory Exposure*

Based on his plea of guilty to a violation of 49 U.S.C. § 46504, Priester faces a maximum term of imprisonment of 20 years, a term of supervised release of not more than three years, a maximum fine of $250,000, and a mandatory special assessment of $100 on each count of conviction for a total of $100.  Doc. 32 at 2.

B.     *Guidelines for the Instant Offense*

The parties acknowledged, pursuant to the Plea Agreement dated October 1, 2025 (Doc. 32), that the Court is required to consider the applicable Sentencing Guidelines as well as the factors enumerated in 18 U.S.C § 3553(a), which may result in a sentence that departs from the calculated Guidelines set forth in the Plea Agreement. Doc. 32 at 3.

The parties further acknowledged, pursuant to the Plea Agreement, on the following Guidelines Stipulation: the defendant's base offense level under U.S.S.G. § 2A5.2(a)(4) is 9 because it is greater than the defendant's base offense level under U.S.S.G. § 2A2.3 (Assault Guideline). *See* U.S.S.G. § 2A5.2(a). *Id.* at 4. Two (2) levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility. The resulting total offense level is 7. *Id.* Additionally, the parties agree that the defendant falls within Criminal History Category ("CHC") II. Assuming a CHC II and a total offense level of 7, the defendant faces a Guidelines range of imprisonment of 2 to 8 months, a fine range of $1,000 to $9,500 (U.S.S.G. § 5E1.2(c)(3)) and a term of supervised release of one to three years. *Id*. The United States Probation Office agreed with the parties' position on the applicable Guidelines. PSR ¶ 3.

C.     *Parties' Agreement Regarding Departures and Non-Guidelines Sentence*

The parties agreed in the Plea Agreement that both parties reserved their right to argue for an upward or downward departure from the Guidelines range of 2 to 8 months of imprisonment. Doc. 32 at 4. The parties also agreed that the Guidelines identified in the Plea Agreement were not binding on the Court. *Id.*

**III.     DISCUSSION**

The Government respectfully asks the Court to impose a term of imprisonment in the middle of the Guidelines range. The issue before the Court is to determine an appropriate sentence for the defendant when applying the relevant factors under 18 U.S.C. §3553(a). In this case, the

3

most significant factors include the seriousness of the offense, the history and characteristics of the defendant, the interest of providing adequate deterrence to criminal conduct, and protecting the public from the defendant's conduct.

### A.     *Seriousness of the Offense*

A sentence of imprisonment in the middle of the Guidelines range would underscore the seriousness of this offense while reinforcing respect for the law. Priester's actions on Flight AA3359 bound for Chicago were unsafe and wholly unacceptable.

Regardless of the reasoning or excuses that Priester posits, he created an extremely dangerous situation when he got out of his seat in the middle of the flight, attacked a flight attendant, and pinned him to the ground after screaming, "you're coming with me." Regardless of what Priester's intentions were, his assault of D.B. created an extremely stressful and tense situation for everyone on board the aircraft while it was in flight. That much is clear from the statement of D.B.'s fellow flight attendant who told the FBI that she was worried that Priester was moving towards the back door of the aircraft, perhaps in an attempt to open the door. Not only did this create an unsafe situation in the cabin of the aircraft, but it also placed additional stress on the captain, whose primary focus was on getting all the passengers on board to Chicago safely. Rather than focusing on that task, after he was notified of Priester's assault of D.B., the captain was forced to call ATC and American Airlines to consult and eventually determine the appropriate steps to take. In short, Priester's unsafe actions not only lessened the ability of D.B., his fellow flight attendant, and the captain to perform their duties, but it also created a potentially dangerous situation for everyone on board the aircraft.

Although Priester's assault of D.B. most certainly falls on the less violent end of the spectrum of assault, it encapsulates a disturbing and dangerous trend in unruly and assaultive

behavior by passengers on commercial aircraft. Although the numbers have somewhat decreased in recent years, in 2025 alone, the Federal Aviation Administration ("FAA") received 1,621 reports of unruly passengers.[1] Since 2021, approximately 12,900 unruly passenger incidents have been reported by flight crews to the FAA.[2] Not only does this create an unsafe situation for the crew, including the flight attendants who serve passengers in the cabin, but it also elevates the stress of what is an already stressful endeavor for many people. In sum, Priester's conduct was extremely serious and could have led to grave consequences. A sentence of imprisonment in the middle of the Guidelines range appropriately captures the severity of his conduct and also promotes respect for not only the law, but also the men and women whose job it is to ensure the safety and wellbeing of airline passengers.

  B. *History and Characteristics of the Defendant*

The Court must weigh the seriousness of Priester's offense with his history and characteristics. The Government recognizes that Priester has dealt with some significant trauma in his life, particularly as it relates to the tragic death of his parents in 2022 as highlighted in the PSR and his sentencing memorandum. PSR ¶ 38. Priester also appears to have a serious problem with alcohol and drug use, as is evident from his own statements in the PSR as well as the facts surrounding his arrest in this case. While his past trauma and his substantial addiction issues are certainly mitigating, they do not excuse his conduct. The truth is, there is no excuse for the type of behavior Priester engaged in on Flight AA3359. Perhaps most concerning is that this is not Priester's first incident where his drinking and/or drug use has led him to violence. He was convicted in 2023 of aggravated assault with a deadly weapon, assault, and unlawful discharge of

---

[1] https://www.faa.gov/unruly (last visited January 13, 2026).
[2] https://www.businessinsider.com/travel-chaos-flight-attendants-plane-passengers-freaked-out-flying-2025-4 (last visited January 12, 2026).

a firearm in city limits in Sedgwick, Kansas. While those convictions are certainly concerning, the facts underlying the conviction are particularly striking. During that incident in 2023, Priester was heavily intoxicated and vomited in the backseat of his friend's car. After being told to clean up his vomit, Priester became upset and poured a bottle of vodka on the seat while threatening the occupants of the vehicle. PSR ¶ 29. At that point, Priester was punched in the face by one of the occupants of the vehicle and removed from the vehicle. After he was removed from the vehicle, Priester pulled out his firearm and threatened to kill his friend before firing at the vehicle as it sped away. *Id.*

Now, once again, Priester finds himself in a situation where he resorted to violence after apparently ingesting a highly potent "edible" before boarding the flight. Priester's struggles with addiction are certainly not an excuse for this type of behavior, and he must learn that he cannot continue to ingest substances, lose his temper and control, and engage in violent behavior. The Government notes that it's clear that Priester is cognizant of his serious issues with drugs and alcohol and has taken some remedial steps to face his problems head on. For example, Priester's attendance and successful treatment at the Salvation Army Treatment program appears to have him on a better path towards a more disciplined and regimented schedule that will keep him away from drugs and alcohol. In his own words, his alcohol and drug use led to his prior conviction for assault and his discharge from the military. Now, they have led him to a second serious conviction. Nevertheless, it's clear that Priester has made some progress that he can hopefully continue. A sentence in the middle of the Guidelines range in this case would appropriately balance the severity of Priester's actions while also capturing the momentum of his recent efforts to turn his life around and combat his issues with drugs and alcohol.

### C. Adequate Deterrence to Criminal Conduct and Public Safety

The Government has little doubt that a sentence of incarceration in the middle of the Guidelines range will promote specific deterrence to ensure that Priester does not engage in this type of conduct ever again. While the notion of specific deterrence is certainly important here, the sentence here should also serve the purposes of general deterrence. As discussed above, the FAA receives a number of complaints about unruly passengers each year, a Guidelines sentence would serve the purpose of deterring other individuals from engaging in the same type of behavior. The sentence here should send a strong message to anyone who flies on commercial aircraft; flights are not free-for-alls. The law applies in the air, and assaults on flights, particularly of the flight crew and flight attendants, is unacceptable and unsafe for everyone, and they come with serious consequences.

### D. Proposed special conditions of supervised release

The PSR sets forth seven (7) "special" conditions for the Court to consider imposing during Priester's term of supervised release. *See* PSR ¶ 134. District Courts possess "broad discretion" to impose "special" conditions of supervised release "which constrain the defendant's behavior." *United States v. Sims*, 92 F.4th 115, 119 (2d Cir. 2024); see U.S.S.G. § 5D1.3(b) (authorizing imposition of "discretionary conditions.").

"[A]s a general matter," a "district court may impose special conditions of supervised release that are reasonably related to certain statutory factors governing sentencing, involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing, and are consistent with pertinent Sentencing Commission policy statements." *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019) (internal quotation marks and alterations omitted).

7

A district court should "make an individualized assessment" and state its reason for imposing the special condition. *Sims,* 92 F.4th at 123-24.

Proposed special conditions (1) – (7) are all reasonably related to the sentencing factors addressed in detail above, including protecting the public as well as the serious nature and circumstances of Priester's offenses, and involve no greater deprivation of liberty than reasonably necessary.

## IV.    CONCLUSION

Priester must be held accountable for his actions. For the reasons stated above, the Government respectfully submits that in balancing all the § 3553(a) factors, including those discussed above, just punishment in this case is a sentence of imprisonment in the middle of the Guidelines range.

    Respectfully submitted,

    DAVID X. SULLIVAN
    UNITED STATES ATTORNEY

    _____
    CHRISTOPHER J. LEMBO
    ASSISTANT U.S. ATTORNEY
    Fed Bar No. phv207767
    157 Church Street, 25th Floor
    New Haven, CT 06510
    Tel: (203) 821-3700

CERTIFICATE OF SERVICE

    I hereby certify that on January 13, 2026, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access their filing through the court's CM/ECF system.

                                                                                                                  _____
                                                                                                                  CHRISTOPHER J. LEMBO
                                                                                                                  ASSISTANT U.S. ATTORNEY